Flomarcy Company, Inc. v. Commissioner. Jose Bensaude and Maria Bensaude v. Commissioner.
Flomarcy Co. v. Commissioner
Docket Nos. 77222, 77225.
United States Tax Court
T.C. Memo 1962-201; 1962 Tax Ct. Memo LEXIS 109; 21 T.C.M. (CCH) 1094; T.C.M. (RIA) 62201; August 21, 1962
*109 Samuel Zuckerman, Esq., 1674 Broadway, New York, N. Y., for the petitioners. Joseph F. Rogers, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined deficiencies in income tax and additions to tax in these consolidated cases as follows: Additions to tax-1939 Code
Sec.
Sec.
Sec.
294
294
Petitioner
Year
Tax
293(b)
(d)(1)(A)
(d)(2)
Flomarcy Company, Inc. Dkt. No. 77222
F/y ended
$6,810.04
$3,952.68
11/30/51
Jose and Maria Bensuade Dkt. No. 77225
1951
7,219.74
3,609.87
$685.02
$456.68
1952
48.04 Respondent concedes error with respect to the addition to tax under section 294 (d)(2) of the 1939 Code. The issues remaining for determination are: (1) Whether respondent correctly determined that specific payments to third parties were commission income to Flomarcy and taxable dividends to Jose and Maria Bensaude; (2) whether part of any deficiency for 1951 in either or both cases is due to fraud with intent to evade tax; and (3) whether petitioners Jose and Maria Bensaude are liable for additions to tax under section 294(d)(1)(A). *110 Findings of Fact Petitioners in Docket No. 77225 are Jose Bensaude (hereinafter called petitioner) and his wife, Maria. They timely filed their joint income tax returns for the calendar years 1951 and 1952 with the district director of internal revenue for the fourteenth district of New York. Petitioner in Docket No. 77222 is Flomarcy Company, Inc. (hereinafter called the corporation). The corporation had offices at 90 Broad Street, New York City, and timely filed its corporate tax returns for the fiscal years ended November 30, 1951 and November 30, 1952 with the collector of internal revenue for the second district of New york and the director of internal revenue, Lower Manhattan district of New York, respectively. Petitioner, as president and controlling executive of the corporation signed the corporate returns. The corporation was a steamship agent for several steamship lines on the Atlantic coast and in the Gulf of Mexico. It contracted to several stevedoring concerns the stevedoring work for the ships of the lines for which the corporation was acting as agent. The corporation received a rebate or commission for each ton handled by these stevedoring firms as a result of *111 these contracts. The corporation kept a regular set of books and records, and the tax returns filed in the fiscal years 1951 and 1952 were in accordance with these books and records. During the years in issue, the corporation had complete control over the contracting of the stevedoring work for its clients. On or about August 18, 1950, John Jayne, the corporation's traffic manager, entered into a contract with the John W. McGrath Corporation (hereinafter called McGrath), entitling a wholly-owned subsidiary of McGrath, Atlantic and Gulf Stevedores, to do stevedoring work in the Gulf of Mexico for the corporation. In New York, the corporation acted as agent for the American-Israeli Shipping Co., Inc., and several Portuguese shipping concerns. The Jarka Corporation originally did the stevedoring work for all of the corporation's clients in New York. During 1951, Jarka was losing money and found it difficult to pay its commissions to the corporation. The latter gave the stevedoring business of the American-Israeli Shipping Company to McGrath. McGrath accounted for the commissions due the corporation in an account entitled "Commissions Payable, Flomarcy & Co." In 1951, the following *112 entries were made in this account for amounts owed the corporation as commissions: Jan. Balance
$ 2,400.12
Jan. 31
2,222.33
Feb. 28
1,923.75
Mar. 8
2,187.01
Mar. 31
2,312.44
Apr. 30
1,802.64
Oct. 25
1,200.00
$14,048.29 In 1951, payments of accrued commissions owed to the corporation were recorded in the "Commissions Payable" account as follows: Mar. 20
$ 4,066.32
June 22
6,458.44
Aug. 17
1,802.64
Dec. 12
1,200.00
$13,527.40 These entries represented the payment by McGrath of commissions accrued as a result of tonnage worked on ships for which the corporation was agent, and paid by check at the corporation's direction to the following payees: Check No.
Date of check
Payee
Amount
13426
Mar. 21, 1951
Violet Ford
$4,066.32
14421
June 22, 1951
Star Line of Panama, Inc.
6,458.44
14940
Aug. 17, 1951
Star Line of Panama, Inc.
1,802.64
16357
Dec. 12, 1951
Star Line of Panama, Inc.
1,200.00
McGrath was instructed by letter, in the case of each check, with regard to the payee and the amount of the check. In several instances, the president or the controller of McGrath received telephone calls *113 from John Jayne and petitioner confirming the instructions. Violet Ford was an employee of Marine International, Inc. Marine International had its offices at 89 Broad Street, New York, New York. Petitioner was the president of Marine International. Violet Ford spent most of her working hours at the offices of Marine International. Frequently, she was present at the corporation's offices at 90 Broad Street. On March 21, 1951, a deposit was made with the Bank of the Manhattan Company to the account of Violet S. Ford, c/o Marine International Co., Inc., 89 Broad Street, New York, New York, in the amount of $4,066.32. Star Line of Panama, Inc., was a Panamanian corporation that owned and operated the SS. Jackstar. The corporation was agent for the Jackstar and handled the assigning of the stevedoring work for the ship. Petitioner was the president of Star Line. Star Line never had any control over the assigning of the stevedoring contracts to McGrath. The SS. Jackstar had, on a few occasions before 1951, entered into contracts with the American-Israeli Shipping Company. On the following dates, Swiss Bank Corporation, New York Agency, issued credit memoranda indicating the following *114 deposits to the account of Star Line of Panama, Inc., Panama City, Rep. of Panama #50655: Date
Received from
Amount
6/27/51
Star Line of Panama, Inc.
c/o Flomarcy Company, Inc.
90 Broad Street
New York, N. Y.
$6,458.44
8/20/51
John W. McGrath Corpora-
tion
39 Broadway, N. Y.
1,802.64
12/20/51
You [Star Line of Panama,
Inc.] * * *
1,200.00 Petitioner, as president of Star Line, had the authority, upon his signature alone, to draw upon any balance in this account. Check No. 13426 was originally drawn payable to the Wall Street Mercantile Corporation. On the basis of further clarification, McGrath canceled the first check and issued a second check in the same amount to Violet Ford. The second check was paid and entered on McGrath's records. A detachable portion of the first check, bearing the legend "Payee Will Detach and Retain This Portion," contained the following identification extracted from the cablegram therein referred to: Paid to Wall Street Mercantile Corporation representing service fee of Manhattan Mercantile (Representacoes) Limitada Praca Pio X-78, Rio de Janeiro, Brazil - per cable 3/19/51 and letter 3/20/51 This detachable *115 portion is normally attached to the check and sent to the payee. McGrath retained this portion of the voided check drawn to the Wall Street Mercantile Corporation. The corporation did not record these four payments from McGrath, totaling $13,527.40, in its books and records, and did not include the payments as commission income on its tax returns for the fiscal year 1951. Petitioner did not include these payments as income on his return filed for 1951 or 1952. Respondent, in his deficiency notice, determined that the corporation had understated its "income from commissions reported on [its corporate tax] return" in the amount of the four checks paid by McGrath to Violet Ford and Star Line. Respondent, in his deficiency notice to petitioner, determined that "the payments of $13,527.40 made for your benefit by [McGrath] * * * constituted a taxable dividend." Petitioner, without reasonable cause, failed to file declarations of estimated tax for 1951. Opinion Although petitioners did not personally appear at the trial, and no witnesses were produced by them, they were represented by counsel throughout. There was hence the opportunity of interposing objections and availing *116 themselves of cross-examination of respondent's witnesses. Respondent's determination of the deficiencies as to both corporate and individual petitioners is presumptively correct. No affirmative evidence to carry petitioners' burden was produced. The deficiencies in tax must accordingly be sustained. Emanuel Hollman, 38 T.C. - (May 11, 1962). The addition to tax for fraud is premised, as are the deficiencies, upon the theory that four payments in the tax years before us were due the corporate petitioner but paid at its direction to nominees of the individual petitioners, its shareholders; neither the payment for the corporation's account nor the putative constructive dividends having been reported. See . There is no proof of these facts adequate to sustain the burden resting on respondent with respect to the fraud. . Still less can we find that whatever was done was fraudulent. There is no direct proof of any such purpose, and the usual facts justifying the inference, as, for example, repeated and consistent understatements, are lacking. See *117 (C.A. 9, 1958), affirming on this issue . We conclude that respondent may not be sustained as to the fraud issue. There being no evidence on the subject, we cannot find that there was reasonable cause for the failure of the individual petitioners to file declarations of estimated tax for 1951. The addition under section 294(d)(1)(A) is accordingly approved. Decisions will be entered for the respondent, except as to sections 293(b) and 294(d)(2).